OPINION
{¶ 1} Defendant-appellant, Rosiland B. Ivery, was convicted of obstructing official business, in violation of R.C. 2921.30, and fined $500 plus court costs. Appellant filed a notice of appeal and raises the following assignments of error:
 [I.] The evidence was legally insufficient to support appellant's conviction as the state failed to prove she delayed Officer Kevin Richards in "guarding evidence."
 [II.] The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.
 [III.] Appellant's conviction was against the manifest weight of the evidence.
 {¶ 2} By the first assignment of error, appellant contends that the evidence was legally insufficient to support her conviction. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 3} At the trial six police officers testified. Four of the officers were on bike patrol and riding through appellant's neighborhood on July 20, 2005, at approximately 3:00 p.m. One of these officers, Kyle McKeon, testified that the officers approached from the south and rode through the backyard of an abandoned house and saw three or four men on the porch but the men immediately left the porch when they saw the officers and entered a house several doors away. The officers found approximately 100 grams of marijuana on the porch. Then they observed an unattended running car without a front license plate. The officers decided to impound the vehicle. During an inventory search of the inside, the officers found a loaded pistol and another 100 grams of marijuana. Officer McKeon stated that, as the officers were completing the inventory, appellant came out of her house and began yelling at the officers. The initial interaction was with him and lasted approximately 20 seconds and appellant stayed at the top of the stairs in her yard. (Tr. at 16.) The weapon and marijuana were taken to the trunk of the vehicle to secure the weapon and to render it safe. While Officer Kevin Richards was trying to secure the weapon, appellant was yelling and moved toward the officers. A large crowd was developing and two other officers arrived in cruisers. Appellant was asked several times to remove herself from the immediate area and to return to her porch. Finally, appellant was arrested and taken to one of the cruisers.
 {¶ 4} Officer Michael Bruce's testimony was substantially similar to Officer McKeon's testimony. He testified that initially another young woman came outside and inquired as to what the officers were doing. Officer Bruce did not remember appellant until Officer Daniel Yandrich advised her to go back to her porch. Appellant was on the sidewalk, yelling loudly and was combative, argumentative, and aggressive. Officer Bruce did not advise appellant to return to her porch but he heard Officers Joseph Hern and Yandrich do so approximately five to ten times.
 {¶ 5} Officer Hern testified that he told appellant to retreat one or two times. Appellant approached the officers in an aggressive and angry manner and made more than one attempt to approach them. Officer Hern believed appellant had a pen in her hand and she stated she wanted badge numbers or an officer's name. (Tr. at 50-51.)
 {¶ 6} Officer Yandrich testified he did not remember appellant asking for names or badge numbers. However, he did hear Officer Hern tell appellant to stop at least two times. When appellant was within approximately three feet of Officer Richards, Officer Yandrich arrested her. As he was placing her in the cruiser, appellant stated she wanted badge numbers and that was the reason she came down off the porch.
 {¶ 7} Officer Jason Law testified that he was working in a police cruiser and arrived at the scene because a crowd of 15 to 20 people was gathering. Officer Law did not speak to appellant but she kept approaching the vehicle and Officer Richards and he heard officers tell her at least three times to retreat. Appellant was upset and yelling at the officers.
 {¶ 8} Finally, Officer Richards testified that appellant was upset, argumentative, confrontational, and angry with the officers. He heard approximately four commands to appellant to retreat. He had to stop what he was doing and direct his attention to appellant three or four times and she delayed what the officers were doing. (Tr. at 100.)
 {¶ 9} Shemiko Brisco testified that she is a friend and neighbor of appellant. She stated that the police were rude to appellant and called her a liar when appellant told them the men from the porch did not enter her house. Ms. Brisco only saw appellant approach the officers one time and ask for a badge number.
 {¶ 10} Mellany Hines was walking to the drugstore and saw appellant return home as officers were questioning appellant's daughter. One police officer called appellant a liar when she told him no men entered her house. Appellant then went into her house and returned with a pen and paper and approached the officers, asking for a badge number.
 {¶ 11} Appellant's daughter, Renisha Ivery, testified. She stated that appellant arrived while the police officers were harassing her. Appellant asked the officers why they were harassing Renisha. Appellant went into the house and returned with a pen and paper and walked to the curb and asked the officer for his badge number.
 {¶ 12} The trial court found appellant was guilty of violating R.C.2921.31, which provides, as follows:
 (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
 {¶ 13} Thus, to prove the elements of obstructing official business, plaintiff-appellee, the State of Ohio, had to prove that: (1) appellant engaged in an unprivileged act; (2) the act was done with purpose or intent to hamper or impede the performance of a public official; and (3) the act substantially hampered or impeded the official in the performance of the official's duties. Appellant argues that the evidence was legally insufficient to establish that she acted with the purpose to prevent, obstruct or delay the performance of an official duty.
 {¶ 14} R.C. 2901.22(A) provides that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 15} In this case, several officers testified that appellant was told numerous times to retreat and stop approaching the officers. All of the officers testified that appellant was yelling loudly at the officers in an angry and aggressive manner. Several officers testified that appellant's behavior did delay the officers in performing their official duties. However, there was no evidence that appellant acted in such a manner with the purpose to prevent, obstruct or delay the performance of an official duty, nor is there any evidence or suggestion that the officers made appellant aware she was delaying the performance of their duties.
 {¶ 16} Officer Hern testified that he believed appellant had a pen in her hand, wanted to write something down and she stated she wanted badge numbers or a name. (Tr. at 50-51.) Officer Yandrich testified that appellant told him she wanted badge numbers and that was the reason she approached the officers. (Tr. at 85.) Officer Richards also heard appellant ask officers for names and badge numbers. (Tr. at 108.) All three of appellant's witnesses testified that appellant asked the officers for their badge numbers. (Tr. at 113, 121, 138.) Thus, the testimony established that appellant was seeking to identify the officers, not necessarily to delay the officers in their official duties. Thus, even viewing the evidence in a light most favorable to the prosecution, appellee did not prove one of the essential elements of the crime beyond a reasonable doubt. Even if appellant's conduct was improper or inappropriate and did obstruct the officers' performance of their duties, it does not constitute an offense under R.C. 2921.31
unless it was her purpose to hamper or impede official business. Appellant's first assignment of error is well-taken.
 {¶ 17} By the second assignment of error, appellant contends that the trial court erred in overruling appellant's motions for acquittal pursuant to Crim.R. 29. Crim.R. 29(A) provides, as follows:
 The court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
 {¶ 18} When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, a reviewing court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998),127 Ohio App.3d 511, 525. In her third assignment of error, appellant contends that the conviction was against the manifest weight of the evidence. The test for whether a judgment is against the manifest weight of the evidence involves a limited weighing of the evidence by the court to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt.
 {¶ 19} Given our disposition of the first assignment of error, the second and third assignments of error are sustained as well.
 {¶ 20} For the foregoing reasons, appellant's three assignments of error are sustained, the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court with instructions to dismiss.
Judgment reversed and cause remanded with instructions.
BRYANT and TRAVIS, JJ., concurring separately.
 WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.