[Cite as *State v. Redman*, 2016-Ohio-860.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**STATE OF OHIO,**

      **PLAINTIFF-APPELLEE,**               **CASE NO.  1-15-54**

      **v.**

**JASON D. REDMAN,**                       **O P I N I O N**

      **DEFENDANT-APPELLANT.**

Appeal from Allen County Common Pleas Court
Trial Court No. CR20140443

**Judgment Affirmed**

Date of Decision:   March 7, 2016

**APPEARANCES:**

     *Kenneth J. Rexford* **for Appellant**

     *Jana E. Emerick* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Jason D. Redman ("Redman"), appeals the August 24, 2015 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On October 17, 2014, the Allen County Grand Jury indicted Redman on two counts, including: Count One of assault in violation of R.C. 2903.13(A) and 2903.11(D)(1)(a), a first-degree misdemeanor, and Count Two of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(D)(1)(a), a second-degree felony. (Doc. No. 1). This case stems from an altercation between Redman and four women—Sharon Fay Amanda Weaver ("Weaver"), Patricia McKinney ("McKinney"), Shelly Vettori ("Vettori"), and Penni Cash ("Cash")—that occurred on August 8, 2014. On that night, while walking to an establishment in Lima, Ohio, the women crossed paths with Redman. Words and mutual shoving were exchanged, which escalated to Redman allegedly punching Vettori one time and Cash multiple times. Redman's alleged conduct toward Vettori created the basis for Count One of the indictment and his alleged conduct toward Cash created the basis for Count Two of the indictment. Vettori suffered a split lip and Cash sustained multiple breaks and fractures to her face and a concussion. (July 14, 2015 Tr. at 121).

{¶3} The case proceeded to a jury trial on July 14-15, 2015. On July 15, 2015, the jury found Redman guilty as to the counts in the indictment. (Doc. Nos. 95, 96); (July 15, 2015 Tr., Vol. II, at 294). The trial court filed its judgment entry of conviction on July 16, 2015. (Doc. No. 97). On August 24, 2015, the trial court sentenced Redman to 180 days in jail on Count One and 2 years in prison on Count Two, and ordered that Redman serve the terms concurrently. (Doc. No. 102); (Aug. 24, 2015 Tr. at 22).

{¶4} On August 25, 2015, Redman filed his notice of appeal. (Doc. No. 104). He raises four assignment of error for our review. For ease of our discussion, we will first address together Redman's second and third assignments of error, followed by his first and fourth assignments of error.

### Assignment of Error No. II

**The verdict for Count II was not supported by sufficient evidence of serious physical harm and was not supported by sufficient evidence that Mr. Redman knew the probable harm was to be serious when he acted.**

### Assignment of Error No. III

**The verdict for Count II was against the manifest weight of the evidence.**

{¶5} In his second and third assignments of error, Redman argues that his felonious-assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. In particular, Redman argues that the State

failed to prove that he knew that his conduct would result in serious physical harm to the victim and that Cash suffered serious physical harm.

{¶6} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). As such, we address each legal concept individually.

{¶7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No.

4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶8} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶9} The criminal offense of felonious assault is codified in R.C. 2903.11, which provides, in relevant part: "No person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2903.11(A)(1). The requisite culpable mental state for felonious assault is "knowingly." "A person acts knowingly,

regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Serious physical harm" is any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶10} The State presented testimony from seven witnesses during trial. First, Weaver testified that Redman, with a closed fist, punched Cash in the face several times. (July 14, 2015 Tr., Vol. I, at 49-50). Weaver described, "[Cash]

went down several times. I can't tell you how many times. But every time she went down he would stand over her and start to go back down after her." (*Id.* at 50). According to Weaver, Cash fell to the sidewalk because Redman hit her so hard. (*Id.*). Weaver testified, "At one point he did hit her and she turned her head and blood was just pouring out of her face." (*Id.* at 53). On cross-examination, Weaver testified that Redman pushed Cash, Cash pushed him back, "and then he started punching her." (*Id.* at 64). Weaver testified, "He hit her. I don't know how many times he hit her. She went down; yes," and when she went down, "[h]e looks at her and then he comes back at her again" "[t]o punch her again; to continue to beat her up." (*Id.* at 66). According to Weaver, Redman continued to punch Cash while she was on the ground and punched Cash when she was trying to stand back up. (*Id.* at 66-67).

{¶11} Next, McKinney testified that, after Redman punched Vettori, Cash stepped between Redman and Vettori to defend Vettori, and Redman began punching Cash in her face. (*Id.* at 77). According to McKinney, Redman punched Cash at least four times, and Cash "went down" more than one time. (*Id.* at 83). McKinney testified that Cash was bleeding while Redman was punching her. (*Id.*). On cross-examination, McKinney testified that Cash went down to the ground on either the first or second punch and that Cash went down at least three times. (*Id.* at 88-90).

{¶12} Third, Vettori testified, "[Redman] punched [Cash] in the face. She went down. She got up. He punched her again. She went down. She got back up. He punched her again. Then, when she was down [on the ground] he punched her three times back to back." (*Id.* at 101). According to Vettori, she could hear every punch hit Cash's face. (*Id.* at 103). Vettori testified that Cash was bleeding "like a faucet. It was pouring out. At one point she turned her head and the blood just sprayed across." (*Id.*). Vettori further testified that Cash began bleeding with the first punch. (*Id.* at 104).

{¶13} Cash testified that Redman punched her with a "full fist," but that she does not remember anything after the first punch until she pulled out her cell phone from her pocket to call the police. (*Id.* at 116-117). However, Cash testified that she could not use her phone to call the police because it "was filled with blood so [she] just put it back in [her] pocket." (*Id.* at 118). According to Cash, she was bleeding a lot, and, when the police were questioning her, she had to spit blood out of her mouth onto the sidewalk or the grass to be able to speak with them. (*Id.* at 119). Regarding her injuries, Cash testified that she experienced "instant swelling; pain; it just felt, I don't know it hurt pretty bad." (*Id.* at 120). According to Cash, she has a high pain tolerance, but her "face was broken and, yes, it hurt, and it swelled [and b]y the time [she] got to the hospital [she] was thinking 'can they just help [her], please'." (*Id.*).

{¶14} Cash testified that she was diagnosed with "three breaks in [her] maxillary sinus * * * [p]lus, multiple fractures * * * [and] a concussion." (*Id.* at 121). Cash testified that she was treated and released from the hospital, but had to return to the hospital later the next day because she "started coughing up blood." (*Id.* at 122). As part of her medical treatment, Cash was seen by a plastic surgeon "because they were worried about the facial bones and if [she] needed to have surgery or not." (*Id.*). However, according to Cash, the plastic surgeon advised her against surgery and suggested she let her face heal on its own. (*Id.* at 123). Cash also testified, "I slept for three days straight. I could not drink. My face had swollen real big. Also, my eye was swollen almost shut. I did miss about ten days of work due to the fact that I couldn't work with not being able to talk." (*Id.*).

{¶15} According to Cash, she has not yet healed from her injuries. (*Id.* at 124). Specifically, she described that she experiences discomfort during weather changes, that her face swells and her lip droops from that swelling after working an eight-hour shift, that she slurs her speech, that she has difficulty drinking from a straw, and that she has lost feeling in a portion of her face. (*Id.*). According to Cash, she has permanent nerve damage in her face, which has required additional treatment. (*Id.*). Cash testified that a nerve block was initially used to treat that nerve damage, but it was unsuccessful, so she is going to try a course of treatment involving Botox injections to relieve her pain. (*Id.*). Moreover, Cash described

that she experiences migraine headaches and takes migraine pills and nerve-block pills to relieve that pain. (*Id.* at 124-125). Cash identified State's Exhibits 3 and 4 as true and accurate photographs taken of her facial injuries on August 8, 2014. (*Id.* at 119-120). On cross-examination, Cash testified that she did not recall most of her encounter with Redman because she lost consciousness after the first punch. (*Id.* at 127, 131).

{¶16} Next, Patrolman Mark Link ("Patrolman Link") of the Lima Police Department testified that he and another Lima Police Department officer were patrolling on Main Street in Lima when they were flagged down by the women. (*Id.* at 146). He testified that Redman "had already walked past [him] on [his] driver's side and past the cruiser and was continuing to walk northbound" at the time he arrived at the scene. (*Id.* at 149). Patrolman Link testified that he asked Redman to stop and return to the area of his cruiser after he learned from the women that Redman was involved in the altercation. (*Id.*). According to Patrolman Link, Redman complied with his request. (*Id.*). Patrolman Link testified that he arrested Redman for intoxication after he first encountered him. (*Id.* at 150). Patrolman Link identified State's Exhibits 3 and 4 as photographs that he took depicting Cash's injuries. (*Id.* at 151, 153). He testified that he called for an ambulance to transport Cash and Vettori to the hospital. (*Id.* at 154). On cross-examination, Patrolman Link testified that he examined Redman's hands for

evidence of a fist fight, but determined that "he had nothing on his hands"—that is, that he had no abrasions or marks on his hands. (*Id.* at 160, 161). According to Patrolman Link, he did not examine the women's hands; rather, he took photographs of Cash's and Vettori's injuries to their faces. (*Id.*).

{¶17} Michael Sandford ("Sandford") testified that he witnessed the altercation from his apartment, which is across the street from where the altercation took place. (July 15, 2015 Tr., Vol. II, at 166-168). According to Sandford, he "was just laying down * * * about to fall asleep and then [he] heard something," which caused him to look out his bedroom window that overlooks Main Street. (*Id.* at 168). Specifically, Sandford testified that he "heard yelling and then [he] heard a man's voice and [he] heard a lady, a whole bunch of women's voices." (*Id.* at 168-169). When Sandford looked out his window, he saw "a man hit a taller woman – 'cause [sic] there was a couple of them there – and as soon as [he saw] him hit the woman [he] decided to run downstairs as fast as possible to try to stop it." (*Id.* at 169). He testified that he saw Redman walk up to the women "as they were trying to tell him to go away" and then saw Redman "swing at one of them." (*Id.*). By the time Sandford exited his apartment, the police arrived at the scene. (*Id.* at 170-171).

{¶18} As its final witness, the State presented the testimony of Detective Robert Stoodt ("Detective Stoodt") of the Lima Police Department who testified

that he investigated the case. (*Id.* at 175-176). In particular, Detective Stoodt testified that he interviewed the four women and Redman. (*Id.* at 177, 179). Detective Stoodt did not interview Sandford because he was unable to contact him. (*Id.* at 179). At Cash's interview on August 11, 2014, Detective Stoodt observed her injuries and described them as "swelling on the left side of her face, a black eye, and it was very puffy." (*Id.* at 177-178). Detective Stoodt testified that he obtained Cash's medical records and that those records confirmed what Cash told him was her diagnosis. (*Id.* at 183). Detective Stoodt identified State's Exhibits 5 and 6 as photographs that he took depicting Cash's injuries. (*Id.* at 178). Detective Stoodt identified State's Exhibit 7 as a video recording of his interview with Redman, which was subsequently played for the jury. (*Id.* at 180).

{¶19} Thereafter, the State moved to admit its exhibits, which were admitted without objection, and rested. (*Id.* at 203-204). Next, Redman made a Crim.R. 29(A) motion, which the trial court denied. (*Id.* at 204-205). Redman did not provide any evidence, rested, and renewed his Crim.R. 29(A) motion, which was denied. (*Id.* at 206). The matter was submitted to the jury, which found Redman guilty as to Counts One and Two. (*Id.* at 291, 294).

{¶20} We first review the sufficiency of the evidence supporting Redman's felonious-assault conviction. *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999

WL 355190, *1 (Mar. 26, 1999). Redman argues that the State did not prove beyond a reasonable doubt that he *knowingly* caused Cash *serious physical harm*.

{¶21} We first address the sufficiency of the evidence as to whether Redman acted knowingly. Redman argues that circumstantial evidence of intent is insufficient to prove that he acted knowingly. However, "[p]roof of intent may be derived from circumstantial evidence, as direct evidence will seldom be available." *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, ¶ 31 (10th Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990) and *State v. Tarver*, 9th Dist. Summit No. 22057, 2004-Ohio-6748, ¶ 10. "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *Id.*, quoting *State v. Bentz*, 2 Ohio App.3d 352, 355, (1st Dist.1981), fn. 6, citing *Ohio Jury Instructions*, Section 5.10(d) (1968). "Circumstantial evidence has probative value equal to direct evidence." *Id.*, citing *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). As such, Redman's argument is meritless.

{¶22} Nevertheless, Redman alleges that the testimony of the witnesses was insufficient to establish that he *knowingly* caused Cash serious physical harm. The State was not required to prove that Redman punched cash with the intent to cause her serious physical harm; rather, the State was required to prove that Redman was aware that his conduct would probably cause Cash serious physical

harm. *See State v. Kleekamp*, 2d Dist. Montgomery No. 23533, 2010-Ohio-1906, ¶ 27. There is sufficient evidence that Redman acted knowingly. This court has previously concluded that "[p]unching someone in the face satisfies the requisite culpable mental state for felonious assault." *State v. Beaver*, 3d Dist. Union No. 14-13-15, 2014-Ohio-4995, ¶ 37 ("Beaver was aware that punching [the victim] in the face would probably cause her serious physical harm"), citing R.C. 2901.22(B) and *State v. Higgins*, 9th Dist. Summit No. 26120, 2012-Ohio-5650, ¶ 19 ("[F]or the law to hold him to have acted 'knowingly,' it is only necessary that the serious physical harm is a 'reasonable and probable' result of his action."), quoting *State v. Powell*, 11th Dist. Lake No. 2007-L-187, 2009-Ohio-2822, ¶ 52.

{¶23} Indeed, Redman was aware that punching Cash in the face multiple times would probably cause her serious physical harm. Moreover, Redman was aware that his conduct was probably causing her serious physical harm because, after the first punch, Cash fell to the ground and began bleeding. Despite Cash falling to the ground bleeding, Redman continued to punch Cash in the face as she tried to regain her balance and repeatedly punched Cash in the face when she was on the ground and could not get up. Accordingly, a jury could reasonably conclude that Redman knew that his conduct would probably result in serious physical harm.

{¶24} We next address the sufficiency of the evidence as to whether Cash suffered serious physical harm. Similar to our conclusion in *Beaver*, the physical evidence in the record supports that Redman caused serious physical harm to Cash. *See id.* at ¶ 37. Nonetheless, Redman contends that the evidence presented by the State insufficiently demonstrates that Cash suffered serious physical harm. Instead, Redman argues that the State was required to introduce medical reports and the testimony of a medical professional indicating that the injuries that Cash sustained amounted to serious physical harm. Redman's argument is meritless because the record supports that Cash suffered serious physical harm. *Compare State v. Petty*, 10th Dist. Franklin Nos. 11AP-716 and 11AP-766, 2012-Ohio-2989, ¶ 29 (rejecting the defendant's argument that "the state failed to establish the victim suffered serious physical harm, because it offered no medical evidence to document the victim's injuries 'or to substantiate that the same were serious'").

{¶25} Serious physical harm includes any physical harm that involves "some temporary, substantial incapacity," "some temporary, serious disfigurement," or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c), (d), (e). The record reflects that the responding officers called an ambulance that transported Cash to the hospital, where medical professionals took x-rays and an MRI. (July 14, 2015 Tr., Vol. I, at 120, 154). Cash was

informed that she sustained three breaks to her maxillary sinus, multiple fractures, and a concussion. (*Id.* at 121). After she was treated and released from the hospital, Cash was required to seek further medical treatment when she began expelling blood. (*Id.* at 122). Cash also consulted a plastic surgeon to ensure that the bones in her face would heal properly, but opted against surgery after the plastic surgeon advised against it. (*Id.* at 122-123). "When a victim's injuries are serious enough to cause [her] to seek medical treatment, the jury may infer that the victim suffered serious physical harm." *State v. McCoy*, 10th Dist. Franklin No. 99AP-1048, 2000 WL 1262632, *2 (Sept. 7, 2000), citied in *Petty* at ¶ 30 and *State v. Drew*, 10th Dist. Franklin No. 07AP-467, 2008-Ohio-2797, ¶ 61. *See also State v. Scott*, 8th Dist. Cuyahoga No. 81235, 2003-Ohio-5374, ¶ 7, quoting *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20 (noting that "a [trier of fact] does not err in finding serious physical harm where the evidence demonstrates the victim sustained injuries necessitating medical treatment").

{¶26} Further, Redman's conduct caused Cash to bleed significantly, and caused her to bleed after the first punch. (July 14, 2015 Tr., Vol. I, at 53, 103, 118-119). *See State v. Morris*, 7th Dist. Monroe No. 03 MO 12, 2004-Ohio-6810, ¶ 35 (concluding that there was sufficient evidence of serious physical harm because, in part, the victim testified that the first punch made his nose bleed). And Cash testified that she cannot remember anything after the first punch until after

Redman stopped assaulting her because she "was out, out cold." (July 15, 2015 Tr., Vol. I, at 116-117). "A loss of consciousness, 'irrespective of its duration,' satisfies the requirements for a temporary, substantial incapacity.'" *Petty* at ¶ 34, citing *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19, *State v. Swank*, 10th Dist. Franklin No. 81AP-749, 1982 WL 3985, *1 (Feb. 23, 1982) (concluding that the State presented sufficient evidence of serious physical harm because the victim was "knocked temporarily unconscious after being struck and choked, and that her face was 'pretty well battered and bleeding and her eye required six stitches'"), *State v. Redwine*, 12th Dist. Brown No. CA2006-08-011, 2007-Ohio-6413, ¶ 32 (concluding that "[l]osing consciousness as a result of an assault constitutes serious physical harm"), and *State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16 (concluding that "[t]emporary unconsciousness constitutes a temporary substantial incapacity, and therefore serious physical harm").

{¶27} As a result of her injuries, Cash suffered significant bruising and swelling to her face as evidenced by the photographs, which were admitted into evidence. (*See* State's Exs. 3-6); (July 14, 2015 Tr., Vol. I, at 120, 123-124, 151, 153, 177-178). *See Beaver*, 2014-Ohio-4995, at ¶ 37, citing *State v. Stover*, 3d Dist. Union No. 14-12-24, 2013-Ohio-5665, ¶ 44 (finding that the victim suffered serious physical harm under R.C. 2901.01(A)(5)(d) because his "face was

extremely bruised and swollen"). She further described that she missed ten days of work because she could not speak, that she could not drink, and that she slept for three days after the altercation. (July 14, 2015 Tr., Vol. I, at 123). Cash also testified that she had not yet healed from her injuries at the time of trial and continued to experience discomfort. *See Beaver* at ¶ 37, citing *State v. Lawson*, 3d Dist. Union No. 14-06-13, 2006-Ohio-5160, ¶ 27 (concluding that the jury did not lose its way in finding that two months of persistent pain constituted either "acute pain of such duration as to result in substantial suffering" or "any degree of prolonged or intractable pain" under R.C. 2901.01(A)(5)(e)). In particular, she continues to experience swelling in her face, which causes her lip to droop, that she slurs her speech, that she has difficulty drinking from a straw, that she lost feeling in a portion of her face, and that she experiences migraine headaches. (July 14, 2015 Tr., Vol. I, at 124). Cash is continuing to receive medical treatment related to the pain she experiences from the nerve damage in her face and the migraine headaches. (*Id.* at 124-125).

{¶28} Accordingly, a rational jury could find that Cash suffered some temporary, substantial incapacity, some temporary, serious disfigurement, or a duration of acute pain that resulted in substantial suffering or any degree of prolonged intractable pain. Therefore, there is sufficient evidence that Redman caused Cash serious physical harm.

{¶29} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Redman knowingly caused Cash serious physical harm, and therefore, committed felonious assault.

{¶30} Having concluded that Redman's conviction is based on sufficient evidence, we next address Redman's argument that his conviction is against the manifest weight of the evidence. *Velez*, 2014-Ohio-1788, at ¶ 76. On appeal, Redman argues that the jury lost its way in concluding that Redman *knew* that his conduct would cause Cash serious physical harm.[1] In particular, Redman argues that the lack of evidence of any marks or abrasions on his hands is weightier than the testimony of the witnesses that he knew that he was causing Cash serious physical harm when he was punching her in the face. He also argues that the State's witnesses lacked credibility.

{¶31} "Although an appellate court considers credibility in a manifest-weight review, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *Petty*, 2012-Ohio-2989, at ¶ 38, citing *State v. Williams*, 10th Dist. Franklin No. 02AP-35, 2002-Ohio-4503, ¶ 58. "Consequently, even though an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it

---

[1] Redman makes no argument with respect to the serious-physical-harm element of felonious assault in his third assignment of error. As such, we will not address it.

-19-

must also give great deference to the fact finder's determination of the witnesses' credibility." *Id.*, citing *Williams* at ¶ 58. "To that end, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it." *Id.*, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. "Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment." *Id.*, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶32} While Redman contends that "[t]he scene [as] described [by the women as] resemble[ing] the most horrible of scenes in the movie Rocky" was not plausible or credible, there is nothing that indicates that the jury lost its way in considering the evidence. (Appellant's Brief at 22). As we summarized in our discussion of the sufficiency of the evidence above, Redman punched Cash in the face with a closed fist multiple times causing her significant bleeding, multiple breaks and fractures to her face, and a concussion. Cash testified that she lost consciousness after the first punch. The other women—Weaver, McKinney, and Vettori—testified that Redman punched Cash in the face multiple times. The jury heard the witnesses testify that they saw Redman punch Cash in the face with enough force to knock her to the ground several times, and that each time she would try to regain her balance, he would assault her again. The jury also heard the testimony of Vettori that Redman sequentially punched Cash in the face three

times when she was on the ground. Vettori also testified that Cash began bleeding after the first punch. The women further testified that Redman's assault on Cash caused her to bleed substantially. Indeed, Weaver described that the blood was "pouring out of her face," and Vettori described Cash as bleeding "like a faucet." (July 14, 2015 Tr., Vol. I, at 53, 103). Moreover, Cash described that she could not use her cell phone to call the police after the assault because it "was filled with blood" and that she had to spit blood out of her mouth to be able to speak with the police. (*Id.* at 118-119).

{¶33} Also, as we summarized above, Cash's testimony documented the extent of her injuries. Cash's diagnosis was corroborated by Detective Stoodt who testified that he obtained Cash's medical records. That Redman acted knowingly—that he was aware that his conduct would probably cause Cash serious physical harm—is further corroborated by the photographs of Cash's injuries.

{¶34} The only evidence to which Redman points, which he argues weighs against that he acted knowingly, is the evidence that he lacked any marks of any kind on his hands. Patrolman Link testified that he did not observe any marks or abrasions on Redman's hands when he examined them for evidence of a fist fight. (*Id.* at 160-161). The State, however, introduced as evidence a video recording of Redman's statement that he provided to Detective Stoodt after the altercation,

which was played for the jury. (*See* State's Ex. 7). With regard to Redman's hands, the video depicts Detective Stoodt examining Redman's hands and Redman describing that the marks and abrasions present on his hands were the result of his employment as a HVAC technician. (*See id.*). Furthermore, while Redman did not testify in his defense, the jury was able to hear and weigh his version of events from the video recording. (*See id.*).

{¶35} Accordingly, Redman's argument is underwhelming compared to the evidence that he knowingly caused Cash serious physical harm. After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the jury's credibility determinations, we cannot conclude that the jury, as the trier of fact, clearly lost its way and created a manifest injustice. As such, we are not persuaded that Redman's felonious-assault conviction must be reversed and a new trial ordered.

{¶36} Redman's second and third assignments of error are overruled.

**Assignment of Error No. I**

**Mr. Redman was denied his right to trial by jury, as guaranteed by both the United States Constitution and the Ohio Constitution, when the Trial Court refused to instruct the jury as to or allow the jury to consider the lesser included offense of misdemeanor assault pursuant to R.C. §2903.13(B) as to Count II.**

{¶37} In his first assignment of error, Redman argues that the trial court erred by refusing to allow the jury to consider the lesser-included offense of assault under R.C. 2903.13(B).

{¶38} "A jury instruction on a lesser-included offense is only required if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense.'" *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 16, quoting *State v. Douglas*, 3d Dist. Marion No. 9-05-24, 2005-Ohio-6304, ¶ 20, citing *State v. Thomas*, 40 Ohio St.3d 213, 216 (1988). "The trial court's decision whether to instruct the jury on a lesser included offense will not be reversed absent an abuse of its discretion." *Id.*, citing *Douglas* at ¶ 20, citing *State v. Mitchell*, 53 Ohio App.3d 117, 119-120 (8th Dist.1988). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶39} In determining whether a particular offense should be submitted to the jury as a lesser-included offense, the Supreme Court of Ohio has set forth a two-tiered analysis. *State v. Singh*, 3d Dist. Logan No. 8-15-04, 2015-Ohio-4130, ¶ 5, citing *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6.

> The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. * * *

The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" * * * Only in the second tier of the analysis do the facts of a particular case become relevant.

*Id.*, quoting *Deanda* at ¶ 6.

**{¶40}** "[A]ssault in violation of R.C. 2903.13(B) is a lesser included offense of a felonious assault in violation of R.C. 2903.11(A)(1)." *State v. Turks*, 3d Dist. Allen Nos. 1-10-02 and 1-10-26, 2010-Ohio-5944, ¶ 27. Since assault under R.C. 2903.13(B) is a lesser-included offense of felonious assault, we turn to whether "the facts in this case would support the trial court instructing the jury on the additional offenses." *Singh* at ¶ 7. "'The mere fact that an offense is a lesser included offense of the charged offense does not mean that the trial court must instruct on both offenses.'" *Id.*, quoting *State v. Simonis*, 3d Dist. Seneca No. 13-14-05, 2014-Ohio-5091, ¶ 32. "As noted by the Ohio Supreme Court, when conducting this analysis, the evidence must be viewed in a light most favorable to the defense." *Id.*, citing *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 21.

**{¶41}** As we noted above, R.C. 2903.11(A)(1) prohibits an actor from knowingly causing serious physical harm to another. The definition of assault under R.C. 2903.13(B) prohibits an actor from recklessly causing serious physical

harm to another. Therefore, the distinguishing element between felonious assault under R.C. 2903.11(A)(1) and assault under R.C. 2903.13(B) is whether the defendant acted knowingly or recklessly. As we defined above, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist. Accordingly, the relevant inquiry is whether Redman acted recklessly—that he was aware that his conduct would likely result in serious physical harm—as opposed to knowingly— that he was aware that his conduct would probably result in serious physical harm.

{¶42} Redman argues that the trial court abused its discretion by not submitting to the jury the lesser-included offense of assault under R.C. 2903.13(B) because the evidence presented at trial reasonably supports an acquittal of the felonious-assault charge—that is, the evidence presented at trial reasonably supports that he did not act knowingly. In support of his argument, Redman points to the trial court's comment that "'maybe Mr. Redman didn't expect to cause the

serious harm that he did'" as evidence that the trial court's decision not to instruct the jury on the lesser-included offense of assault under R.C. 2903.13(B) is unreasonable, arbitrary, or unconscionable. (Appellant's Brief at 19, citing Aug. 24, 2015 Tr. at 19).

{¶43} In particular, Redman argues that the women's testimony describing the incident was implausible and "completely refuted as nonsense" because one of the photographs depicting Cash's injuries showed only "a small amount, contextually, of blood dripping from Ms. Cash's nose." (*See id.* at 18-19, citing State's Ex. 4). Redman contends that the women's description of the scene, which made it seem like it was "bloody mayhem," is contradicted by the lack of evidence of any marks or abrasions or any blood on Redman's hands. Therefore, Redman argues, the lack of that type of evidence reasonably supports an acquittal of the felonious-assault charge because there is a lack of evidence that he acted knowingly. That is, Redman hypothesizes that if he were to have broken "'the hardest bone * * * in the human body'" as described by Cash, it would be reasonable to expect to find bruising or blood from the victim on Redman's hand that delivered the punch. (*Id.* at 19, citing July 14, 2015 Tr., Vol. I, at 123). Redman also points to the portion of State's Exhibit 7, the video recording of his statement to Detective Stoodt, showing his surprise that he caused the level and

amount of injuries to Cash that she sustained because he was "'shocked' and did not know that he hit Penni Cash that hard." (*Id.* at 19, citing State's Ex. 7).

**{¶44}** As we summarized in Redman's second and third assignments of error, the evidence presented at trial revealed that Redman with a closed fist punched Cash in the face multiple times. After the first punch, Cash fell to the ground and began bleeding, yet Redman continued to punch Cash in the face as she tried to regain her balance and repeatedly punched Cash in the face when she was incapacitated on the ground. Nonetheless, Redman attempts to discount that evidence by discrediting the women's testimony regarding the "blood evidence." Regardless of whether the scene could be described as "bloody mayhem" or whether there was only "a small amount, contextually, of blood dripping from Ms. Cash's nose," Redman ignores the evidence that, despite that she was bleeding after the first punch, he continued to punch her in the face. This evidence, coupled with the evidence that he continued to punch her after she fell to the ground and attempted to regain her balance and after she remained incapacitated on the ground, demonstrates that Redman was aware that his conduct would probably cause Cash serious physical harm. *Compare State v. Lewis*, 7th Dist. Mahoning No. 01-CA-59, 2002-Ohio-5025, ¶ 58 (concluding that the trial court did not abuse its discretion by not submitting to the jury the lesser-included offense of assault under R.C. 2903.13(B) because the record demonstrated that Lewis "knew" he

would cause serious physical harm because he "repeatedly struck [the victim's] face with his closed fist"). Thus, even viewing this evidence in a light most favorable to Redman, it does not reasonably support an acquittal on the felonious-assault charge.

{¶45} Moreover, despite Redman's contention regarding the lack of evidence of marks, or abrasions, or blood on his hands, State's Exhibit 7 reflects Redman explaining to Detective Stoodt that the marks and abrasions observed by Detective Stoodt on Redman's hands were work-related injuries. Therefore, even though Patrolman Link testified that "he had nothing on his hands," the jury saw Redman explaining the marks and abrasions that Detective Stoodt observed on his hands.

{¶46} Viewing this evidence in a light most favorable to Redman, we cannot conclude that a jury could reasonably find him not guilty of felonious assault. That is, it is clear that a reasonable juror could conclude that Redman acted knowingly. Because we conclude that the evidence does not reasonably support an acquittal for felonious assault, we need not examine whether the evidence reasonably supports a conviction for assault under R.C. 2903.13(B). Therefore, the trial court did not abuse its discretion by not submitting to the jury the lesser-included offense of assault under R.C. 2903.13(B).

{¶47} Redman's first assignment of error is overruled.

**Assignment of Error No. IV**

**The Trial Court erred in sentencing Mr. Redman.**

{¶48} In his fourth assignment of error, Redman argues that the trial court erred in sentencing him to two years in prison as opposed to imposing only community control sanctions. In particular, Redman argues that the trial court erred in concluding that he did not overcome the presumption in favor of prison.

{¶49} A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record; the sentencing statutes' procedure was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law. *State v. Ramos*, 3d Dist. Defiance No. 4-06-24, 2007-Ohio-767, ¶ 23 (the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C) * * *); *State v. Rhodes*, 12th Dist. Butler No. CA2005-10-426, 2006-Ohio-2401, ¶ 4; *State v. Tyson*, 3d Dist. Allen Nos. 1-04-38 and 1-04-39, 2005-Ohio-1082, ¶ 19, citing R.C. 2953.08(G).

{¶50} "R.C. Chapter 2929 governs sentencing." *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 10. "R.C. 2929.11 provides, in pertinent part, that the 'overriding purposes of felony sentencing are to protect the public

from future crime and to punish the offender.'" *Id.*, quoting R.C. 2929.11(A). "In advancing these purposes, sentencing courts are instructed to 'consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.'" *Id.*, quoting R.C. 2929.11(A). "Meanwhile, R.C. 2929.11(B) states that felony sentences must be 'commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim' and also be consistent with sentences imposed in similar cases." *Id.*, quoting R.C. 2929.11(B). "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Id.*, citing R.C. 2929.12(A).

{¶51} "'Trial courts have full discretion to impose any sentence within the statutory range.'" *Id.*, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. As a second-degree felony, felonious assault carries a non-mandatory presumption of two to eight years imprisonment. *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 25, citing R.C. 2903.11, 2929.13(D), and 2929.14(A)(2). That presumption may be overcome, and "the sentencing court may impose * * * community control sanctions instead of a

prison term" if the trial court concludes that "community control sanctions would adequately punish the offender and protect the public from future crime" and "would not demean the seriousness of the offense." R.C. 2929.13(D)(2). "As the plain statutory language indicates, the sentencing court is under no obligation to impose community control sanctions simply because the offender meets the eligibility requirements." *Davis* at ¶ 25. "Rather, community control sanctions are an alternate means of effectuating justice if such means satisfy statutory requirements and are deemed appropriate by the trial court." *Id.*

**{¶52}** "Despite the sentencing discretion afforded to a trial court, the imposition of a non-mandatory term of imprisonment requires the trial court to review certain R.C. 2929.12 factors which involve the seriousness of the offender's conduct and the likelihood of the offender committing future crimes." *Id.* at ¶ 26. "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12." *Smith* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). At Redman's sentencing hearing and in its sentencing entry, the trial court considered the R.C. 2929.12 factors. (Aug. 24, 2015 Tr. at 17-21); (Doc. No. 102).

**{¶53}** In assessing whether Redman was likely to commit future crimes, the trial court concluded that Redman "demonstrated a pattern of drug or alcohol

abuse that related to the offense and that [Redman] refuses to acknowledge that [he] has demonstrated that pattern, or [Redman] refuses treatment for the drug or alcohol abuse." (Doc. No. 102, quoting R.C. 2929.12(D)(4)). (*See also* Aug. 24, 2015 Tr. at 19-20). Weighing in Redman's favor, the trial court found the following factors indicating that Redman is not likely to commit future crimes: "[(1)] Prior to committing the offense [Redman] had not been adjudicated a delinquent child[; (2)] Prior to committing the offense [Redman] had not been convicted or pleaded guilty to a criminal offense[; (3)] Prior to committing the offense [Redman] had led a law-abiding life for a significant number of years[; and (4) Redman] shows a genuine remorse for the offense." (Doc. No. 102, quoting R.C. 2929.12(E)(1), (2), (3), and (5)). (*See also* Aug. 24, 2015 Tr. at 19-20).

{¶54} In addressing the seriousness of Redman's conduct, the trial court concluded that Redman's "conduct is more serious than conduct normally constituting the offense" because the victim "suffered serious physical, psychological, or economic harm as a result of the offense." (Doc. No. 102, quoting R.C. 2929.12(B)(2)). (*See also* Aug. 24, 2015 Tr. at 17). The trial court did not find any of the factors under R.C. 2929.13(C) indicating that Redman's conduct is less serious than the conduct normally constituting the offense. (Aug. 24, 2015 Tr. at 21).

{¶55} After finding and weighing those factors, the trial court concluded that Redman did not overcome the presumption in favor of prison and imposed the minimum prison sentence—two years. Under R.C. 2929.13(D), the trial court may find that the presumption in favor of prison is rebutted only if it finds both of the following:

> (a)  A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.

> (b)  A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.

R.C. 2929.13(D)(2)(a)-(b). The trial court concluded "that the factors indicating that it's less likely that [Redman will] commit future crimes certainly outweigh the factors indicating that it's likely that he's going to reoffend." (Aug. 24, 2015 Tr. at 20-21). However, the trial court concluded that Redman's conduct was more serious conduct than conduct normally constituting the offense—that is, the trial court found one factor indicating that Redman's conduct was more serious than conduct normally constituting felonious assault and none of the factors indicating that Redman's conduct was less serious than the conduct normally constituting felonious assault. (*Id.* at 21). Indeed, the trial court concluded that imposing community control sanctions would demean the seriousness of the offense. (Doc. No. 102); (Aug. 24, 2015 Tr. at 21).

{¶56} Accordingly, the relevant inquiry is whether Redman clearly and convincingly established that his sentence is unsupported by the record—namely whether Redman clearly and convincingly established that the record does not support the trial court's conclusion that his conduct is more serious than conduct that normally constitutes the offense because Cash suffered serious physical harm as a result of the offense.

{¶57} As we summarized above, Cash testified to the extent of her injuries. Moreover, as we also illustrated, Detective Stoodt testified that the diagnosis Cash reported to him when Detective Stoodt interviewed Cash was corroborated by

Cash's medical records, which Detective Stoodt testified that he obtained. In addition, Cash submitted to the trial court a victim impact statement detailing the harm that she suffered. Thus, Redman failed to clearly and convincingly establish that the record does not support the trial court's conclusion that Cash suffered serious physical harm as a result of the offense—one of the factors under R.C. 2929.12(B) that the trial court is to consider when determining if an offender's conduct is more serious than conduct normally constituting the offense. The trial court must have afforded more weight to that factor than any of the mitigating factors. *See Smith*, 2015-Ohio-4225, at ¶ 15. As we noted above, because a sentencing court has broad discretion to determine the relative weight to assign the R.C. 2929.12 sentencing factors, the trial court did not err by sentencing Redman to a term of imprisonment rather than community control sanctions. *See id. See also Davis*, 2002-Ohio-7068, at ¶ 27.

{¶58} Redman's fourth assignment of error is overruled.

{¶59} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**