[Cite as *State v. Stansel*, 2019-Ohio-1906.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-76 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-520 |
| | : | |
| ROBERT STANSEL, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Robert Stansel, Jr., was convicted by a jury of felonious assault (serious physical harm). Stansel asserts that the State of Ohio did not produce sufficient evidence to prove that the victim, Daniel Romine, suffered serious physical harm. Stansel further argues that the jury's serious physical harm determination was against the manifest weight of the evidence. The conclusion that Romine suffered serious physical harm was not against the manifest weight of the evidence, and, given this conclusion, the State produced sufficient evidence to establish the serious physical harm element of the offense. The trial court's judgment will, accordingly, be affirmed.

**Facts**

{¶ 2} Romine, age 66, was the owner of Whitey's, a tavern located in Springfield, Ohio. On July 11, 2017, at approximately 1:00 A.M., there were four individuals inside the tavern: Romine, William Seibold, Penny Boisel, and Stansel. Seibold and Boisel were regular tavern patrons. In contrast, Stansel, who came to the bar with Boisel, was a first-time customer.

{¶ 3} Stansel and Boisel had visited at least two other Springfield taverns before their arrival at Whitey's. There was agreement that Boisel was quite intoxicated, such that she was either in a seated or prone position on the floor near the stool that she had occupied. There was also no dispute that Boisel vomited while on the tavern floor. At this point, competing versions emerge concerning what next occurred. Romine testified that Stansel attempted to assist Boisel and that Seibold took offense to those efforts; as a result, harsh words were exchanged. Romine further testified that, as he was dealing with the mess Boisel had made, he concluded he had "had enough of this stuff," and he

"told Stansel to leave." According to Romine, Stansel resisted this command, indicating that he had arrived "with Penny, he's leaving with Penny, [he would] take care of her." According to Romine's account, Stansel ultimately left the bar, but "he was mad about it, cussing * * *."

{¶ 4} Romine further testified that, after Stansel left the bar, he continued to "clean-up," and as part of this effort, he exited the bar to take a trash bag containing Boisel's "puke" and other items to the bar's dumpster. Romine recounted that, while he was outside, Stansel attacked him and, as a result, he was "knocked out." Romine, by his account, "woke up" and returned to the bar. Romine's wife was called, and Romine's son came to the bar and transported Romine to the hospital. Seibold, though not mentioning any verbal dispute with Stansel, testified in a fashion fairly consistent with Romine's version of events.

{¶ 5} According to Stansel's contrasting account, he emerged from the bar restroom, observed Boisel on the floor, and observed Romine yelling "[B]****, what are you doing?" According to Stansel, Boisel vomited at this juncture, so he "rolled her over," presumably to prevent her from choking. Stansel further testified that, as he was giving the indicated assistance, he was "hit in the head," causing him to "blackout * * *." Stansel recounted that he then "got up and I got hit again in the jaw." Although Stansel thought the attacker was Seibold, he was unable to identify which man initiated the attack; however, after the initial blows, both Romine and Seibold were "coming at me," and "that's when I tried to defend myself." Stansel further testified that, at some point during the melee, Romine yelled, "Get the hell out of here. Get out." In response, Stansel "walked out the side door." Instead of leaving the premises, Stansel remained in Whitey's parking

lot, indicating that he did so because Boisel had driven the pair to Whitey's. Stansel recounted that, while outside, he heard someone exit the tavern, that the person's "shadow [was] coming at me, getting bigger and bigger." Though unsure which individual had exited, Stansel decided, as the person came closer, that he needed to protect himself. By his account, Stansel did so by striking the person twice. Stansel acknowledged that the person he struck had to be Romine. Stansel then walked to the tavern where he had left his automobile. Stansel concluded his testimony by indicating he then drove to a friend's home. The friend, Jack Sharp, concluded the defense case by indicating that, in the early morning hours of July 11, Stansel arrived at his home. Sharp testified that Stansel "was bleeding, he had two lumps on his forehead, a mouse under his eye, his jaw was [swollen], his hand was bleeding, and he had urinated and defecated on himself * * *."

{¶ 6} The case was submitted to the jury. The jury instructions included a self-defense instruction. The jury found Stansel guilty. Following a sentencing hearing, the court sentenced Stansel to a five-year prison term.

## Analysis

{¶ 7} Stansel's single assignment of error is as follows:

THE JURY VERDICT WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Although the assignment of error is stated broadly, Stansel focuses his argument upon the serious physical harm element of felonious assault under R.C. 2903.11(A)(1). After a review of the concepts of sufficiency and manifest weight of the

evidence, we will discuss the serious physical harm issue and then review whether the verdict was otherwise against the manifest weight of the evidence.

{¶ 9} A sufficiency of the evidence argument asserts that the State has not presented adequate evidence concerning one or more elements of an offense, and, thus, the verdict is erroneous as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The applicable test is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted.) *Id.* at paragraph two of the syllabus.

{¶ 10} In contrast, an appellate court, when deciding a manifest weight challenge, reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against a conviction." *State v. Radford*, 2d Dist. Clark No. 2016-CA-80, 2017-

Ohio-8189, ¶ 15, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Finally, "while sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *Id.* at ¶ 16, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. Accordingly, the conclusion that a conviction is supported by the weight of the evidence "will also be dispositive of the issue of sufficiency." *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 12} Felonious assault, under R.C. 2903.11(A)(1) prohibits an individual from knowingly causing serious physical harm to another. Serious physical harm, as defined by R.C. 2901.01(A)(5), includes the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶ 13}** Proof of serious physical harm need not include expert medical testimony or the admission of properly authenticated medical records, as suggested by Stansel. *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 24, citing *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 11AP-766, 2012-Ohio-2989, ¶ 29. "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial', 'temporary', 'acute', and 'prolonged.' " *State v. Bootes*, 2d Dist. Montgomery No. 23712, 2011-Ohio-874, ¶ 19, quoting *State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007-Ohio-496, ¶ 37. In fact, momentary unconsciousness, without more, "constitutes a temporary substantial incapacity and therefore serious physical harm." *State v. Holley*, 2d Dist. Montgomery No. 27115, 2017-Ohio-7430, ¶ 54, quoting *State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16.

**{¶ 14}** As noted, Romine testified that Stansel's attack rendered him at least momentarily unconscious and that he did not recall how he traveled from outside back into the bar. Romine further testified that, as a result of the attack, he was admitted to the hospital and that he suffered a broken jaw, a broken eye socket, a broken nose, and his false teeth were damaged. Romine further testified that his "false teeth don't fit right yet" and that he "can't bite down. It just, pops loose." Romine further indicated that, as a result of the broken nose, he continued to have difficulty breathing. Romine's son also testified regarding Romine's continuing difficulties. The State introduced a number of photographs depicting Romine's injuries. The photographs depicted significant facial bruising as well as cuts and bruising to the crown of Romine's head.

**{¶ 15}** Romine's unrebutted testimony concerning his unconsciousness, without

more, was evidence of temporary substantial incapacity. This testimony in conjunction with Romine's testimony regarding his hospitalization, his other injuries, the lingering effects of those injuries (with Romine's son corroborating this testimony), and the photographs depicting Romine's injuries make it impossible to conclude that the jury lost its way concerning the serious physical harm element. This conclusion as to the weight of the evidence, as explained, is also dispositive of Stansel's sufficiency argument.

{¶ 16} The felonious assault conviction was based upon sufficient evidence and was not against the weight of the evidence.

**Conclusion**

{¶ 17} Stansel's sole assignment of error is overruled. The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

John M. Lintz
Amy E. Ferguson
Robert Stansel, Jr.
Hon. Douglas M. Rastatter