[Cite as *State v. Higgins*, 2012-Ohio-5650.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26120 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| THOMAS D.C. HIGGINS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 02 0487 |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2012

MOORE, Judge.

{¶1} Defendant-Appellant, Thomas Higgins, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Charles Ryan Milgrim and Jack Austin Milgrim (collectively, "the Milgrims") are brothers. On the evening of February 13, 2011, Mr. Higgins met the Milgrims to sell them one pound of marijuana. When the Milgrims drove to meet Mr. Higgins to consummate the sale, Mr. Higgins and a friend entered the backseat of the Milgrims' car. C.R. Milgrim then drove a short distance. The end result of the meeting of the four men was that J.A. Milgrim sustained a single gunshot wound. According to the Milgrims, the backseat passenger directly behind J.A. Milgrim attempted to steal the Milgrims' money. Before any sale could occur, he produced a gun and shot J.A. Milgrim when he refused to hand over the money. According to Mr. Higgins, J.A. Milgrim produced a gun, attempted to take the marijuana from Mr. Higgins before any sale could

occur, and engaged in a struggle with Mr. Higgins' friend. Mr. Higgins claimed that he fled the car as the gun went off, while C.R. Milgrim told the police that Mr. Higgins was the man who had shot his brother. When the police located Mr. Higgins several hours later, he initially told them that he had been at his grandmother's house for the entire evening.

{¶3} A grand jury indicted Mr. Higgins on each of the following counts: (1) aggravated robbery, with an attendant firearm specification; (2) felonious assault, with an attendant firearm specification; and (3) having weapons while under disability. A jury trial took place, at the conclusion of which the jurors indicated that they could not reach a verdict on the aggravated robbery count. The State ultimately dismissed that count after the court declared a hung jury. As to the other two counts, the jury found Mr. Higgins not guilty of having weapons while under disability, but guilty of felonious assault and the attendant firearm specification. The court sentenced Mr. Higgins to a total of eight years in prison.

{¶4} Mr. Higgins now appeals from his conviction and raises three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

[MR. HIGGINS] WAS NOT AFFORDED A FAIR TRIAL AND A RIGHT TO EFFECTIVE COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶5} In his first assignment of error, Mr. Higgins argues that he received ineffective assistance of counsel because his trial counsel never filed any pretrial motions, including motions for discovery. We disagree.

{¶6} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984);

*State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial * * *." *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id.* at 689.

{¶7} Mr. Higgins argues that his trial counsel was ineffective because he did not file any pretrial motions. According to Mr. Higgins, his counsel's failure to file a demand for discovery relieved the State of its duty to comply with Crim.R. 16. Mr. Higgins argues that he was prejudiced by his counsel's performance because "it can only be assumed that witness statements, law enforcement reports, and whatever out there may exist regarding this case was not provided to defense counsel * * *."

{¶8} The fact that defense counsel did not file any pre-trial motions does not support a finding of per se prejudice. There is no evidence in the record that discovery did not occur in this case. Indeed, at the final pre-trial hearing, the trial court noted on the record that one reason it had continued an earlier trial date was so that the parties could accomplish "some additional discovery that we discussed at side bar." For the parties to conduct *additional* discovery, discovery must have occurred. By local rule, open-file discovery is mandated in all criminal cases litigated in the Summit County Court of Common Pleas. S.C.C. Rule 21.06.

{¶9} Moreover, Mr. Higgins cannot point this Court to any actual piece of evidence he did not receive in discovery. Instead, he asks this Court to "assume[] * * * whatever out there

may exist * * * was not provided to defense counsel * * *." This Court is confined to the record on appeal and may not engage in assumptions to sustain an ineffective assistance of counsel argument. When "allegations of the ineffectiveness of counsel are premised on evidence outside the record, * * * the proper mechanism for relief is through the post-conviction remedies of R.C. 2953.21, rather than through a direct appeal." *State. v. Sweeten*, 9th Dist. No. 07CA009106, 2007-Ohio-6547, ¶ 12. Mr. Higgins has not shown that he suffered any actual prejudice as a result of his counsel's decision not to file any formal pre-trial motions. *See Strickland*, 466 U.S. at 694. Consequently, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN NOT GRANTING [MR. HIGGINS'] MOTION FOR ACQUITTAL PER OHIO CRIM.[R.]29 BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO FIND HIM GUILTY [OF] FELONIOUS ASSAULT PER R.C. 2903.11.

**{¶10}** In his second assignment of error, Mr. Higgins argues that his felonious assault conviction is based on insufficient evidence. Specifically, he argues that the State failed to prove the serious physical harm and mens rea elements of the offense. We disagree.

**{¶11}** "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶12} The State charged Mr. Higgins with felonious assault under two alternative subdivisions. Pursuant to those subdivisions, "[n]o person shall knowingly * * * (1) [c]ause serious physical harm to another * * *[, or] (2) [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1)-(2). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Serious physical harm" to a person includes:

> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; [and]
>
> * * *
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(c), (e). "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶13} C.R. Milgrim testified that he arranged to buy marijuana from Mr. Higgins through a mutual contact. The two spoke on the phone a few times before Mr. Higgins gave C.R. Milgrim driving directions and the two arranged a meeting. The Milgrims then drove their mother's car to the arranged location. When they arrived, C.R. Milgrim testified, Mr. Higgins and another man climbed into the back of their car with a bag. C.R. Milgrim then drove a short distance away. When he stopped the car, his brother removed an envelope with money from the car's glove box and began to count the money. C.R. Milgrim testified that the drug buy never took place because Mr. Higgins pulled out a gun and tried to forcibly take the money from his

brother. When his brother refused to hand over the money, Mr. Higgins shot him. Mr. Higgins and the other man in the backseat then fled.

{¶14} J.A. Milgrim also testified that he and his brother drove to a pre-arranged meeting in order to purchase marijuana and that, when they arrived at the meeting place, two men got into the backseat of their car. J.A. Milgrim also saw one of the men bring a bag into the car. Much like his brother, J.A. Milgrim recalled driving a short distance once everyone was in the car and then removing the money he had placed in the glove box to count it. He also recalled that the backseat passenger directly behind him tried to grab the money and pulled out a gun. When J.A. Milgrim refused to let go of the money, the backseat passenger shot him. The bullet passed through the back of his left shoulder and out through his chest.

{¶15} J.A. Milgrim testified that his arm immediately went numb upon getting shot. After his brother called 911, he was taken by ambulance to the hospital where he remained for two weeks and received treatment for a collapsed lung, broken rib, and nerve damage. He testified that, as of the time of trial, he continued to have pain from his nerves healing. He testified that he was able to use his arm again after ten weeks of physical therapy, but had not yet regained full function of all the fingers on his left hand.

{¶16} Mr. Higgins first argues that his felonious assault conviction is based on insufficient evidence because the State failed to prove that he caused J.A. Milgrim serious physical harm. Specifically, he argues that there was no testimony from any medical professional in order to establish that J.A. Milgrim's injuries amounted to serious physical harm.

{¶17} Mr. Higgins fails to set forth any law that the State was required to present expert medical testimony to prove serious physical harm. *See* App.R. 16(A)(7). On the contrary, this Court has held that "'serious physical harm' can be inferred under R.C. 2901.01(A)(5) '[w]here

injuries are serious enough to cause [the victim] to seek medical treatment * * *.'" *State v. Sales*, 9th Dist. No. 25036, 2011-Ohio-2505, ¶ 19, quoting *State v. Lee*, 8th Dist. No. 82326, 2003-Ohio-5640, ¶ 24. J.A. Milgrim testified that he sustained a gunshot wound, which caused him to be hospitalized for two weeks. He further testified that he suffered a collapsed lung, broken rib, and nerve damage as a result of the gunshot, and still had nerve damage in his hand as of the time of trial. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State set forth sufficient evidence that J.A. Milgrim suffered physical harm that either involved a temporary incapacity or prolonged pain. *See* R.C. 2901.01(A)(5)(c), (e). Accordingly, we do not agree that the State failed to present sufficient evidence of serious physical harm.

{¶18} With regard to Mr. Higgins' serious physical harm argument, we note that he was charged in the alternative and convicted of a violation of R.C. 2903.11(A)(1)/(2). Mr. Higgins does not address R.C. 2903.11(A)(2) in his sufficiency argument, despite having been convicted under that subdivision. R.C. 2903.11(A)(2) only requires proof of physical harm caused by a deadly weapon or dangerous ordnance. *See* R.C. 2901.01(A)(2) ("physical harm" defined as "any injury, * * * regardless of its gravity or duration"). The victim here clearly suffered an injury, and the jury specifically found that Mr. Higgins displayed, brandished, indicated that he possessed, or used a firearm to facilitate his felonious assault offense. Thus, while we have already concluded that the record contains sufficient evidence of serious physical harm, R.C. 2903.11(A)(2) provides a separate basis for upholding Mr. Higgins' felonious assault conviction.

{¶19} Next, Mr. Higgins argues that his felonious assault conviction is based on insufficient evidence because the State failed to prove that he possessed the requisite mens rea for the offense. For Mr. Higgins to have acted knowingly, he need not have intended to cause

serious physical harm. "Rather, for the law to hold him to have acted 'knowingly,' it is only necessary that the serious physical harm [was] a 'reasonable and probable' result of his action." *State v. Murphy*, 9th Dist. No. 24753, 2010-Ohio-1038, ¶ 20, quoting *State v. Powell*, 11th Dist. No. 2007-L-187, 2009-Ohio-2822, ¶ 52. The victim here testified that he was shot at close range by the backseat passenger in his mother's car after he refused to hand over his money. C.R. Milgrim, the victim's brother, identified Mr. Higgins as the shooter and also testified that Mr. Higgins shot his brother after his brother refused to give him money. Viewing the evidence in a light most favorable to the State, there was sufficient evidence from which a rational trier of fact could conclude that the serious physical harm the victim sustained was the reasonable and probable result of Mr. Higgins' actions. Mr. Higgins' argument to the contrary consists of a blanket statement that the State "failed to meet the mens rea element of Felonious Assault to the jury – that being that he knowingly caused serious physical harm." He does not challenge any of the specific evidence introduced or explain why the State failed to produce evidence that he acted knowingly. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Absent any reasoned argument to the contrary, this Court will not engage in any additional analysis on Mr. Higgins' behalf. Mr. Higgins' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR. HIGGINS'] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE JURY CLEARLY LOST ITS WAY AND CREATED SUCH A MANIFEST MISCARRIAGE OF JUSTICE THAT HIS CONVICTION MUST BE REVERSED.

**{¶20}** In his third assignment of error, Mr. Higgins argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶21} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶22} Mr. Higgins argues that his felonious assault conviction is against the manifest weight of the evidence because the jury lost its way by believing the testimony of the Milgrims over that of Mr. Higgins. Mr. Higgins testified in his own defense and admitted meeting the Milgrims on February 13, 2011, to take part in a drug buy. Mr. Higgins gave the elder brother driving directions and met the Milgrims at their car when they arrived. He then entered the car along with his friend, Marcus Junius, carrying a bag in which Mr. Higgins testified he had placed one pound of marijuana. Mr. Higgins stated that he sat behind the driver of the car and Mr. Junius sat behind the front seat passenger. According to Mr. Higgins, he did not bring a gun with him into the car. Instead, Mr. Higgins claimed that J.A. Milgrim was the one who displayed a gun in the car and tried to force Mr. Higgins and his friend Mr. Junius to hand over the

marijuana that they had brought. At that point, Mr. Higgins testified, Mr. Junius grabbed the gun and he and J.A. Milgrim fought over it. The driver then attempted to get involved and Mr. Higgins held him back. Once the driver was able to escape from Mr. Higgins' grip, however, Mr. Higgins exited the car. Mr. Higgins stated that he heard a gunshot at the point that he stepped out of the car. He then ran away.

{¶23} When the police later searched the Milgrims' car, they found the bag that Mr. Higgins had brought into the car with him. Although the bag contained a shoebox and several papers, it did not contain any marijuana. C.R. Milgrim testified that he looked through the bag directly after the shooting and only found a shoebox filled with paper. Neither of the Milgrims testified that a struggle took place in the car before the shooting occurred. Instead, they both testified that the backseat passengers demanded money from J.A. Milgrim after he began to count it and, when he refused to hand it over, the man directly behind J.A. Milgrim shot him. C.R. Milgrim specifically identified Mr. Higgins as the man who shot his brother.

{¶24} The police were able to locate Mr. Higgins within several hours of the shooting and interviewed him at the police station. Mr. Higgins first told the police that he had not been involved in a shooting because he had been at his grandmother's house the entire evening with a friend. He also told the police that he did not have the cell phone that matched the number the Milgrims had dialed earlier that day because he had lost that phone sometime during the previous month. Only after the police indicated that Mr. Higgins would be charged did Mr. Higgins admit that he had been present at the time of the shooting and still had his cell phone. According to Mr. Higgins, he did not bring a gun with him to meet the Milgrims and did, in fact, have a pound of marijuana with him in the car directly before the shooting.

**{¶25}** Mr. Higgins argues that the jury lost its way in convicting him because his testimony was more credible than that of the Milgrims. As support that his testimony was more credible, Mr. Higgins points to the fact that the Milgrims actively tried to deceive the police after the shooting by removing several incriminating items from their car. Upon searching the area where the Milgrims' car had been parked, the police found a marijuana pipe and scale. Yet, J.A. Milgrim admitted that he threw the items from the car after he had been shot because he did not want the items in the car. Moreover, Mr. Higgins attempted to deceive law enforcement by telling officers that he had been at his grandmother's house at the time of the shooting and had lost his cell phone.

**{¶26}** This Court has held that the weight to be given to the evidence and the testimony of each witness falls squarely within the province of the trier of fact. *State v. Witcher*, 9th Dist. No. 26111, 2012-Ohio-4141, ¶ 14, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35. Here, the jury chose to believe the testimony of the Milgrims over that of Mr. Higgins. Based on our review of the record, we cannot conclude that the jury lost its way by doing so. This is not the exceptional case where the "evidence weighs heavily against the conviction." *Martin*, 20 Ohio App.3d at 175. Consequently, Mr. Higgins' argument that his felonious assault conviction is against the manifest weight of the evidence lacks merit. His third assignment of error is overruled.

III.

**{¶27}** Mr. Higgins' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JANA DELOACH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.