[Cite as *State v. Nagorka*, 2026-Ohio-702.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.   2025CA0001-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ADAM NAGORKA | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No.   2023-CR-0859 |

DECISION AND JOURNAL ENTRY

Dated: March 2, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1} Adam Nagorka appeals from the judgment of the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Nagorka on one count of assault on a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony, and one count of felonious assault on a peace officer in violation of R.C. 2903.11(A)(1), a first-degree felony. The charges were based upon allegations that Nagorka shoved Officer F. (an on-duty police officer with the City of Brunswick), and then punched Officer F. on the side of the head, causing Officer F. to suffer a concussion. Nagorka pleaded not guilty and the matter proceeded to a jury trial.

{¶3} At trial, the State presented evidence indicating that EMS and police officers with the City of Brunswick responded to Nagorka's daughter's ("R.N.") apartment after they received a call that R.N. might be harming herself. Witnesses described the scene inside R.N.'s apartment

as "chaotic[.]" Testimony and police bodycam footage the State presented at trial indicated that R.N. was inside a bedroom at the end of a narrow hallway, refusing to come out and screaming expletives at officers through the closed bedroom door. Several people were inside R.N.'s apartment, including Nagorka and some of R.N.'s children.

{¶4} Officer F. and three other officers who responded to the scene testified on behalf of the State. Officer F. explained that there was "a lot going on" inside the apartment because several people were standing around, some of the interior doors were locked, and he did not know if R.N. was armed and/or needed medical attention. The State played Officer F.'s bodycam footage, and Officer F. testified as to the events depicted in the footage.

{¶5} Officer F.'s bodycam footage showed Nagorka standing near the entrance of R.N.'s apartment while officers spoke to individuals inside the apartment about the situation. As officers were speaking to some of the individuals, Nagorka walked past Officer F. and other officers and proceeded down the narrow hallway toward R.N.'s bedroom. Officer F. asked Nagorka what he was doing, and Nagorka responded: "I'm doing what I want to do." Officer F. positioned himself in front of Nagorka and instructed him to go back down the hallway, explaining that officers needed to ensure R.N. was okay before he could speak with her. Nagorka refused, saying the police were "all fucking assholes" and telling Officer F. to "get the fuck out of [his] way."

{¶6} The bodycam, which was positioned on Officer F.'s chest, then showed Nagorka's chest make contact with Officer F.'s chest. Officer F. explained that Nagorka had tried to "walk right through [him] forcefully[,]" so he pushed Nagorka back to gain distance between them. Officer F. explained that Nagorka "put his hands up and came back at [him,]" and that he deflected Nagorka's hands. Officer F. explained that Nagorka then came around with his right fist and punched him on the left side of his head. Officer F.'s bodycam did not capture the punch due to

its position on Officer F.'s chest and how close Officer F. and Nagorka were standing together in the narrow hallway. Officer F. explained that he struck Nagorka back, and another officer approached Nagorka from behind and wrestled him to the ground. Officers then arrested Nagorka. Officer F. testified that he did not immediately seek medical attention, but that he went to the ER hours later and was diagnosed with a concussion.

{¶7} Three other officers who responded to the scene testified on behalf of the State, none of whom saw the physical altercation between Officer F. and Nagorka. One of the officers testified that he heard shoving and a punch, which he described as "a fist against skin and bone." That officer then turned and "tackle[d]" Nagorka.

{¶8} The State also presented testimony from an ER physician and a chiropractor who treated Officer F. The ER physician testified that she examined Officer F., and that he had an abrasion near his left eye, which was consistent with a blunt force injury to his head. The ER physician also testified that she diagnosed Officer F. with a concussion. The chiropractor testified that he treated Officer F. for head and neck pain Officer F. suffered after the injury.

{¶9} After the State rested, defense counsel moved for acquittal under Crim.R. 29, which the trial court denied. The defense then presented testimony from Nagorka and three of his grandchildren (i.e., R.N.'s children).

{¶10} Two of the grandchildren testified that they did not see the physical altercation between Nagorka and Officer F. The third grandchild testified that he saw Nagorka walk down the hallway toward R.N.'s bedroom. That grandchild testified that Nagorka did not touch an officer, but that an officer "threw [Nagorka] to the ground and then another cop jumped in." On cross-examination, the State asked that grandchild if he stole anything from Drug Mart earlier in the year, to which he responded "Yes."

{¶11} Nagorka testified that he went to R.N.'s apartment to see if she and her children were okay. Nagorka testified that Officer F. stopped him as he was walking toward R.N.'s bedroom, and that Officer F. pushed him. Nagorka testified that he never punched Officer F., and that he was tackled from behind, which pushed him into Officer F. After the defense rested, defense counsel renewed his motion for acquittal under Crim.R. 29, which the trial court denied.

{¶12} The jury found Nagorka guilty of the charged offenses. The trial court set the matter for sentencing and ordered a pre-sentence investigation. The trial court ultimately sentenced Nagorka to twelve months in prison on the assault charge, and six to nine years in prison on the felonious assault charge. The trial court ordered the sentences to run concurrently and gave Nagorka credit for time served. Nagorka now appeals, raising nine assignments of error for this Court's review.

## ASSIGNMENTS OF ERROR I AND II

**MR. NAGORKA'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS.**

{¶13} In his first and second assignments of error, Nagorka purportedly challenges the sufficiency and manifest weight of the evidence. Despite labeling them as separate assignments of error, Nagorka argues his first and second assignments of error together. Yet the sufficiency and manifest weight of the evidence are "quantitatively and qualitatively different[,]" and it is not appropriate to argue them together. *State v. Irvine*, 2019-Ohio-959, ¶ 19 (9th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Omenai*, 2024-Ohio-1571, ¶ 13 (9th Dist.). That said, a review of Nagorka's combined argument indicates that Nagorka has solely challenged the weight of the evidence, not the sufficiency. While Nagorka cites case law regarding the sufficiency standard, he has presented no argument as to how the State failed to present sufficient

evidence in support of his convictions for assault and felonious assault. *See* App.R. 16(A)(7). Nagorka has neither set forth the elements of the offenses, nor explained which element(s) the State failed to prove. This Court will not develop a sufficiency argument on Nagorka's behalf. *State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.).

{¶14} This Court now turns to Nagorka's challenge to the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.).

{¶15} Nagorka asserts that his convictions were against the manifest weight of the evidence for several reasons, including: (1) the record contains inconsistencies and a lack of conclusive evidence that Nagorka assaulted Officer F.; (2) none of the other officers saw Nagorka punch Officer F.; (3) defense counsel failed to point out that Officer F. stated in his bodycam footage that he had "no idea how he was struck in the altercation[;]" (4) discrepancies existed between Officer F.'s bodycam and his testimony; (5) the State presented no corroborating evidence; (6) Officer F.'s concussion diagnosis was based upon his self-reported symptoms, not objective testing; (7) the jury was unaware that Officer F. was involved in past excessive-force claims; (8) the jury was "poisoned" against Nagorka because the bodycams captured R.N. making

inflammatory and irrelevant statements; (9) the State's questioning of Nagorka about internet posts was inflammatory and irrelevant; and (10) the State improperly used Nagorka's grandson's juvenile record to impeach his credibility.

{¶16} Initially, this Court notes that much of Nagorka's challenge to the manifest weight of the evidence misrepresents the record. For instance, Nagorka claims that Officer F.'s bodycam footage contains a statement from Officer F. indicating that he had "no idea how he was struck in the altercation." Nagorka has not provided a timestamp of where that statement appears in Officer F.'s bodycam, nor was this Court able to locate it. *See* App.R. 16(A)(7). Nagorka also claims the State presented no corroborating evidence even though an ER physician testified that she observed an abrasion near Officer F.'s left eye, which was consistent with a blunt force injury to his head, and that she diagnosed Officer F. with a concussion.

{¶17} Additionally, this Court notes that the underlying transcript is almost 600-pages long, containing testimony from ten witnesses. Yet the only citation to the transcript contained in Nagorka's assignment of error is to a transcript page wherein the chiropractor who treated Officer F. testified that he referred Officer F. to a neurologist. Although Nagorka cites generally to the State's Exhibit 1, which contains the officers' bodycam videos, he does not direct this Court to any specific portion of those videos. Nagorka then makes conclusory statements to support his assignment of error, which do not establish that his convictions were against the manifest weight of the evidence. *See State v. Mastice*, 2007-Ohio-4107, ¶ 7 (9th Dist.), quoting *State v. Taylor*, 1999 WL 61619, *3 (9th Dist. Feb. 9, 1999) ("It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.").

**{¶18}** It is the duty of Nagorka, not this Court, to construct an argument in support of his assigned error. *See* App.R. 16(A)(7); *State v. Marshall*, 2025-Ohio-2283, ¶ 56 (9th Dist.), quoting *In re E.G.*, 2017-Ohio-2584, ¶ 27 (9th Dist.). ("[I]t is not the duty of this Court to scour the record for evidence and construct an argument on [Nagorka's] behalf."). At best, Nagorka's challenge to the manifest weight of the evidence is based upon assertions that the jury erroneously believed the State's version of the events, which is not a basis for reversal. *Harris*, 2024-Ohio-196, at ¶ 19 (9th Dist.).

**{¶19}** For the foregoing reasons, Nagorka's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION AS THE STATE FAILED TO MEET THE BURDEN OF PROOF FOR A CONVICTION OF FELONIOUS ASSAULT AND ASSAULT.**

**{¶20}** In his third assignment of error, Nagorka asserts that the trial court erred by denying his motion for acquittal under Crim.R. 29. This Court rejects Nagorka's assignment of error outright because Nagorka has failed to develop an argument in support of his assignment of error. *See* App.R. 16(A)(7). Nagorka simply quotes Crim.R. 29, sets forth the sufficiency standard, and then summarily concludes:

> All the trial court needed to review was the [bodycams] of the officers. In that review and review alone, the motion of acquittal should of (sic.) properly been granted. There is no evidence that Mr. Nagorka intended to cause harm, or serious physical harm to [Officer F.]

**{¶21}** As previously noted, it "is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *Mastice*, 2007-Ohio-4107, at ¶ 7 (9th Dist.), quoting *Taylor*, 1999 WL 61619, at *3

(9th Dist. Feb. 9, 1999). This Court will not scour the record, including an almost 600-page trial transcript, and construct an argument on Nagorka's behalf. *Marshall*, 2025-Ohio-2283, at ¶ 56 (9th Dist.); *see* App.R. 16(A)(7). Nagorka's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE JUVENILE RECORDS TO IMPEACH THE CREDIBILITY OF A WITNESS.**

{¶22} In his fourth assignment of error, Nagorka asserts that the trial court erred by allowing the State to use "records" of his grandson's "juvenile conviction" to impeach his credibility. For the following reasons, this Court overrules Nagorka's fourth assignment of error.

{¶23} Evid.R. 609(D) provides that "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." Under R.C. 2151.357(H), "[e]vidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding." As this Court has explained, "[t]he limitation imposed by Evid.R. 609(D) 'has always been to prohibit the use of a juvenile adjudication for purposes of general impeachment of a witness's credibility.'" *State v. Price*, 2017-Ohio-4167, ¶ 12 (9th Dist.), quoting *State v. Robinson*, 98 Ohio App.3d 560, 568 (8th Dist. 1994).

{¶24} Nagorka's argument regarding the State's use of juvenile "records" fails on its premise. The State asked Nagorka's grandson on cross-examination if he stole anything from Drug Mart earlier that year, to which he responded: "Yes." Defense counsel did not object. Nagorka has not addressed the State's question in his merit brief, explained how it violated the Rules of Evidence, or argued that it resulted in plain error given his trial counsel's failure to object. *See* App.R. 16(A)(7); *State v. Rogers*, 2015-Ohio-2459, ¶ 21-22, citing Crim.R. 52(B). Despite

Nagorka's assertion to the contrary, the State did not introduce "records" pertaining to his grandson's juvenile adjudication. Nagorka's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEEN[TH] AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.**

{¶25} In his fifth assignment of error, Nagorka argues that his trial counsel rendered ineffective assistance. For the following reasons, this Court overrules Nagorka's fifth assignment of error.

{¶26} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Nagorka must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Nagorka must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).

{¶27} Nagorka asserts that his trial counsel rendered ineffective assistance because he failed to: (1) object to the State's use of juvenile records to impeach his grandson's credibility; (2) object to the State's use of still frames taken from the bodycam videos during trial; (3) object to

the admission of the officers' bodycams, and failed to set viewing parameters on those videos prior to their admission; (4) properly cross-examine the ER physician about concussions and her diagnosis of Officer F.; (5) retain a medical expert for trial; (6) cross-examine Officer F. about prior excessive-force claims against him; (7) "play, use, address, or cross examine the officers on the portion of the video, when [Officer F.] asks the other officers, 'who hit him?'"; and (8) object to the State's use of Facebook posts he made after the alleged assault, which the State failed to authenticate. As explained below, Nagorka has failed to establish that his trial counsel rendered ineffective assistance.

{¶28} First, Nagorka's argument that his trial court rendered ineffective assistance because he failed to object to the State's use of juvenile records to impeach his grandson fails on its premise. As explained in this Court's resolution of Nagorka's fourth assignment of error, the State did not introduce—and the trial court did not admit—Nagorka's grandson's juvenile records. Instead, the prosecutor asked Nagorka's grandson if he stole anything from Drug Mart earlier that year. Nagorka has not explained how his trial counsel's failure to object to this question was deficient, nor how it affected the outcome of the trial. *See* App.R. 16(A)(7); *Sowell* at ¶ 138.

{¶29} Second, Nagorka's argument that his trial counsel rendered ineffective assistance because he failed to object to the State's use of still frames taken from the bodycam videos during trial lacks merit. The record reflects that the State took still frames from some of the bodycam videos to show the respective positions of Nagorka and Officer F.'s bodies during the seconds-long physical altercation. The State introduced these still frames during some of the officers' testimony. Defense counsel then used many of the still frames during his cross-examination of the officers (and during his closing argument) to the defense's advantage, including to elicit testimony that none of the still frames showed Nagorka with a "closed fist." This Court fails to see how

defense counsel's failure to object to still frames that defense counsel later used to the defense's advantage resulted in a deficient performance.

{¶30} Third, Nagorka's argument that his trial counsel rendered ineffective assistance because he failed to object to the admission of the officers' bodycams, and failed to set viewing parameters on those videos prior to their admission lacks merit. Initially, we note that Nagorka claims bodycam videos "are hearsay and should never be admitted into evidence without redaction or an objection" without citing any authority in support of his position. *See* App.R. 16(A)(7). Regarding the parameters of the videos, the record reflects that the trial court, the prosecutor, and defense counsel discussed this issue after the State rested. Defense counsel specifically asked how the trial court would "handle it if the jury wants to view the body cams?" The trial court explained that the prosecutor would give the court parameters, and that it would allow the jury to see those portions of the bodycams. Defense counsel then asked the prosecutor if he knew what the parameters would be, and the prosecutor responded that they could "put [their] heads together on that" because they both knew which portions of the video were played for the jury. Defense counsel then indicated that "subject to that[,]" he had no objection to the admission of the bodycams.

{¶31} Nagorka's argument on appeal is premised on the fact that the parties did not set viewing parameters on the bodycam videos, which requires this Court to assume that this was not done. "This Court is confined to the record on appeal and may not engage in assumptions to sustain an ineffective assistance of counsel argument." *State v. Zeber*, 2017-Ohio-8987, ¶ 8 (9th Dist.), quoting *State v. Higgins*, 2012-Ohio-5650, ¶ 9 (9th Dist.). Thus, Nagorka's argument lacks merit.

{¶32} Fourth, Nagorka's argument that his trial counsel rendered ineffective assistance by failing to properly cross-examine the ER physician about concussions and her diagnosis of Officer F. lacks merit. As this Court has explained, "decisions regarding cross-examination are within trial counsel's discretion, and cannot form the basis for a claim of ineffective assistance of counsel." *State v. Rosa-DeJesus*, 2024-Ohio-2472, ¶ 23 (9th Dist.), quoting *State v. Smith*, 2013-Ohio-3868, ¶ 23 (9th Dist.).

{¶33} Fifth, Nagorka's argument that his trial counsel rendered ineffective assistance by failing to retain a medical expert for trial lacks merit. Nagorka's argument is based entirely upon speculation that a medical expert would have provided relevant, favorable testimony for the defense. As this Court has explained, a defendant "cannot establish ineffective assistance of counsel based upon his or her trial counsel's failure to obtain an expert witness when the defendant's argument is based 'entirely upon speculation that such a witness exists, and speculation as to what the testimony of such a witness would be.'" *State v. Moffett*, 2016-Ohio-5314, ¶ 10 (9th Dist.), quoting *State v. Jones*, 2003-Ohio-4518, ¶ 13 (9th Dist.). Thus, Nagorka's argument lacks merit.

{¶34} Sixth, Nagorka's argument that his trial counsel rendered ineffective assistance because he failed to cross-examine Officer F. about prior excessive-force claims against him lacks merit. As noted, "decisions regarding cross-examination are within trial counsel's discretion, and cannot form the basis for a claim of ineffective assistance of counsel." *Rosa-DeJesus* at ¶ 23, quoting *Smith* at ¶ 23. Moreover, as explained in our resolution of Nagorka's eighth assignment of error, Nagorka has not established that evidence of Officer F.'s involvement in a prior excessive-force lawsuit would have been admissible at trial. *See* Evid.R. 402; Evid.R. 404(B). Thus, Nagorka's argument lacks merit.

{¶35} Seventh, Nagorka's argument that his trial counsel rendered ineffective assistance because he failed to "play, use, address, or cross examine the officers on the portion of the video, when [Officer F.] asks the other officers, 'who hit him?'" lacks merits. While Nagorka cites generally to Officer F.'s bodycam video, he fails to identify the timestamp of where that question appears in Officer F.'s bodycam footage, nor was this Court able to locate it. *See* App.R. 16(A)(7). It is Nagorka's burden to establish error on appeal, which he has failed to do. *Mastice*, 2007-Ohio-4107, at ¶ 7 (9th Dist.), quoting *Taylor*, 1999 WL 61619, at *3 (9th Dist. Feb. 9, 1999) ("It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.").

{¶36} Eighth, Nagorka's argument that his trial counsel rendered ineffective assistance because he failed to object to the State's use—and the trial court's admission—of Facebook posts he made after the alleged assault fails on its premise. This Court's review of the transcript indicates that the State never introduced Facebook posts during trial, nor did the trial court admit them. Instead, the record reflects that the prosecutor had printouts of Facebook posts wherein Nagorka referred to the police as the "Blue Line Gang[.]" When the prosecutor asked Nagorka if he had any thoughts on the "Blue Line Gang[,]" defense counsel objected. The trial court then held a sidebar wherein the prosecutor and defense counsel discussed the Facebook posts. The trial court indicated it would allow the State to question Nagorka about his "Blue Line Gang" comment for impeachment purposes. Defense counsel then asserted a continuing objection.

{¶37} After the sidebar, the State asked Nagorka if he ever used the phrase "Blue Line Gang" to refer to the Brunswick police, to which Nagorka responded "Yes." While the prosecutor questioned Nagorka as to his "Blue Line Gang" comment, there is no indication that the prosecutor introduced the Facebook posts, nor does the record reflect that the trial court admitted them into

evidence. The prosecutor then switched subjects and questioned Nagorka as to any injuries he suffered during his altercation with Officer F. Thus, the record reflects that defense counsel did object to the Facebook posts, which the State ultimately did not introduce during trial. Consequently, Nagorka's argument lacks merit.

{¶38} For the foregoing reasons, Nagorka's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED IN PERMITTING THE CROSS EXAMINATION OF AND PERMITTING INTERNET POSTS INTO EVIDENCE WITHOUT PROPER AUTHENTICATION.**

{¶39} In his sixth assignment of error, Nagorka asserts that the trial court erred by allowing the State to cross-examine him about Facebook posts without properly authenticating the posts, and by admitting them into evidence. As explained in this Court's resolution of Nagorka's fifth assignment of error, this Court's review of the record indicates that the State did not introduce—nor did the trial court admit—Nagorka's Facebook posts during trial. Moreover, Nagorka's sixth assignment of error fails to direct this Court to the portion of the transcript upon which he relies. *See* App.R. 16(A)(7); *Marshall*, 2025-Ohio-2283, at ¶ 56 (9th Dist.), quoting *In re E.G.*, 2017-Ohio-2584, at ¶ 27 (9th Dist.) ("[I[t is not the duty of this Court to scour the record for evidence and construct an argument on [Nagorka's] behalf."). Nagorka's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

**THE CUMULATIVE EFFECT OF ERRORS DEPRIVED MR. NAGORKA OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.**

{¶40} In his seventh assignment of error, Nagorka argues that the cumulative effect of the errors at trial deprived him of his constitutional right to a fair trial.

{¶41} "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Gilbert*, 2025-Ohio-4623, ¶ 93 (9th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "In the absence of multiple errors, the cumulative error doctrine does not apply." *Gilbert* at ¶ 93, citing *State v. Hunter*, 2011-Ohio-6524, ¶ 132. "Likewise, if a defendant fails 'to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error.'" *Gilbert* at ¶ 93, quoting *State v. Straughan*, 2021-Ohio-1054, ¶ 68 (9th Dist.).

{¶42} Nagorka has not shown that multiple errors occurred during his trial or that he was prejudiced as a result of any errors that occurred. Accordingly, Nagorka has not established cumulative error. *See Gilbert* at ¶ 93. Nagorka's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

**THE STATE COMMITTED PROSECUTORIAL MISCONDUCT IN FAILING TO PRODUCE THE DOCUMENTATION SURROUNDING [OFFICER F.'S] INVOLVEMENT IN THIRY-FIVE COUNTS OF EXCESSIVE FORCE WHILE ON DUTY AS A SWORN PEACE OFFICER FOR THE STATE OF OHIO.**

{¶43} In his eighth assignment of error, Nagorka argues that the State committed a *Brady* violation by not producing evidence regarding Officer F.'s involvement in past excessive-force claims. For the following reasons, this Court overrules Nagorka's eighth assignment of error.

{¶44} "It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense." *State v. Bethel*, 2022-Ohio-783, ¶ 25. In *Brady v. Maryland*, "the United States Supreme Court held that a state violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by suppressing evidence favorable

to the accused where the evidence is material to guilt." *State v. Brown*, 2024-Ohio-749, ¶ 30, citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

**{¶45}** "To establish a *Brady* violation, a defendant must demonstrate (1) that the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) that the evidence was willfully or inadvertently suppressed by the state, and (3) that the defendant was prejudiced as a result." *Brown* at ¶ 30, citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "Evidence is material—or prejudicial—'when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Brown* at ¶ 30, quoting *Turner v. United States*, 582 U.S. 313, 324 (2017). As this Court has explained, "[o]rdinarily, *Brady* claims cannot be established on direct appeal . . . because they require defendants to prove that the government withheld evidence that was favorable and material to their defense and the record on direct appeal is limited to what was presented at trial." *Covender v. State*, 2023-Ohio-172, ¶ 17 (9th Dist.).

**{¶46}** Prior to the start of trial, the State made an oral motion in limine to prohibit defense counsel from mentioning Officer F.'s prior involvement in an excessive-force lawsuit while Officer F. was employed with the City of Euclid, as well as the discipline Officer F. received in connection with that lawsuit. The State indicated that it did not "have all the details" regarding the prior lawsuit, but that it did not want defense counsel mentioning it during trial because it was irrelevant to the underlying charges.

**{¶47}** In response, defense counsel requested the trial court to reserve ruling on the State's motion in limine until the issue was raised during trial. The trial court then questioned defense counsel as to how information regarding Officer F.'s past conduct could possibly become relevant during trial. Defense counsel argued that testimony during trial could potentially open the door to

this evidence. The trial court indicated that it would reserve its ruling on the issue until the issue arose during trial, but instructed defense counsel not to mention it during opening statements or voir dire. Neither the State nor the defense raised the issue of Officer F.'s prior involvement with an excessive-force lawsuit during trial.

{¶48} At issue in this case was whether Nagorka shoved and then punched Officer F., causing Officer F. to suffer a concussion. Nagorka has not established that information regarding Officer F.'s prior involvement in an excessive-force lawsuit would have been relevant and/or admissible at trial. *See* Evid.R. 402 and Evid.R. 404(B); *State v. Jones*, 2013-Ohio-815, ¶ 27-39 (8th Dist.). Aside from the statements of counsel summarized above, the record contains no information regarding Officer F.'s prior involvement in an excessive-force lawsuit, nor what evidence existed in that regard. *See Covender*, 2023-Ohio-172, at ¶ 17 (9th Dist.) (explaining that *Brady* claims ordinarily cannot be established on direct appeal because the record is limited to what was presented at trial). Thus, Nagorka has not established on appeal that the State suppressed evidence, which caused him to suffer prejudice. *See Brown*, 2024-Ohio-749, at ¶ 30; *Covender* at ¶ 17. Consequently, Nagorka's eighth assignment of error is overruled.

### ASSIGNMENT OF ERROR IX

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT, ADAM NAGORKA, BY SENTENCING HIM TO SIX TO NINE YEARS IN PRISON AS SAID SENTENCE IS EXCESSIVE AND CONSTITUTES AN ABUSE OF DISCRETION.**

{¶49} In his ninth assignment of error, Nagorka argues that the trial court erred by sentencing him to six to nine years of incarceration because the sentence is excessive, and the trial court failed to consider the sentencing factors in R.C. 2929.11. For the following reasons, Nagorka's ninth assignment of error is overruled.

{¶50}   In reviewing a felony sentence, "[t]he . . . standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶51}   A sentencing court has "full discretion to impose a prison sentence within the statutory range" and is not "required to make findings or give their reasons for imposing . . . more than the minimum sentence[ ]." *State v. Foster*, 2006-Ohio-856, paragraph seven of the syllabus. "[N]evertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 2006-Ohio-855, ¶ 38. "Unless the record shows that [a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 2014-Ohio-3651, ¶ 8 (9th Dist.), quoting *State v. Boysel*, 2014-Ohio-1272, ¶ 13 (2d Dist.).

{¶52}   As noted, the jury found Nagorka guilty of one count of assault on a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony, and one count of felonious assault on a peace officer in violation of R.C. 2903.11(A)(1), a first-degree felony. The count for assault carried a mandatory term of at least 12 months of incarceration. R.C. 2903.13(C)(5)(a); R.C.

2903.13(C)(6).  The count for felonious assault carried a maximum indefinite term of 11 to 16.5 years of incarceration.    R.C. 2903.11(D)(1)(a); R.C. 2929.14(A)(1)(a).

{¶53}  At the sentencing hearing, the trial court indicated that it considered "all of the relevant factors set forth in the statute[,]" the PSI, as well as the information the State and defense counsel presented in their sentencing briefs and during the hearing.  The trial court indicated that Nagorka's conduct showed a "complete utter disrespect" for law enforcement,  and that Nagorka continued to fail to take responsibility for his actions.  The trial court sentenced Nagorka to twelve months in prison on the assault charge, and six to nine years in prison on the felonious assault charge.  The trial court ordered the sentences to run concurrently and gave Nagorka credit for time served.  In its subsequent sentencing entry, the trial court explained that the "prison term for this offense would adequately punish the offender and/or protect the public from future crime by this offender and/or others."

{¶54}  Nagorka has not established that the record does not support the trial court's findings under the relevant statutes, or that his sentence is otherwise contrary to law.  *See State v. Sampson*, 2023-Ohio-2342, ¶ 39 (9th Dist.).  "The trial court had full discretion to impose a prison sentence within the statutory range, including a maximum sentence." *Id.*  Instead of imposing the maximum sentence, the trial court sentenced Nagorka to a total prison term of  six to nine years. Thus, Nagorka's sentence is within the statutory range, and the record neither shows that the trial court failed to consider the sentencing factors, nor that Nagorka's sentence is "strikingly inconsistent" with those factors.  *See Fernandez*, 2014-Ohio-3651, at ¶ 8 (9th Dist.), quoting *Boysel*, 2014-Ohio-1272, at ¶ 13 (2d Dist.).  Accordingly, Nagorka's ninth assignment of error is overruled.

III.

**{¶55}** Nagorka's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

CHRISTINE A. RUSSO, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.